**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Lance Gerald Milliman,<br><br>                Plaintiff,<br><br>v.<br><br>Driver License Compact Commissioner; Nia Ray; Michael J. Ordnung; Andrew, County of; Steven Stevenson; Howell, County of; Michael P. Hutchings; Ron Replogle; S.L. Nelson; Levi Stoops; K. Shewey; Pat McCormack; Michael J. Thompson; Lori Swanson; Joan Eichhorst; Kristi Nielsen; and William Young,<br><br>                Defendants. | Case No. 16-cv-1209 (JRT/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

Plaintiff Lance Gerald Milliman brings this action alleging myriad federal constitutional violations by Missouri and Minnesota officials. Milliman did not pay the filing fee for this case, but instead field an application to proceed *in forma pauperis* ("IFP"). As explained in greater detail below, this Court declines to grant Milliman's IFP application as Milliman's complaint fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Accordingly, it is recommended that this matter be summarily dismissed with prejudice.

## I. BACKGROUND

Milliman is a citizen of Minnesota.  Prior to the events at issue in this lawsuit, Milliman worked as a commercial truck driver.  In 2010, while driving his truck, Milliman was subjected to a traffic stop in Andrew County, Missouri by Defendant K. Shewey, a Missouri State Highway Patrol Commercial Vehicle Inspector.[1]  (*See* Compl. ¶ 15 [Doc. No. 1].)  Milliman alleges that Shewey lacked authority to effect the traffic stop, as Shewey's authority extends only to weigh stations, whereas Milliman was stopped on the open highway.  (*Id*.)  Milliman also alleges that Shewey lacked probable cause to stop his vehicle.  In any event, as a result of the stop, Milliman was cited for (1) operating as an interstate motor fuel user without being properly licensed or having purchased the appropriate permits, *see* Mo. Rev. Stat. § 142.830; and (2) failing to keep a proper driver's logbook, *see* Mo. Rev. Stat. § 307.400.  Milliman, acting pro se, later attempted to negotiate a plea agreement concerning the charges, but no such agreement was reached, and a warrant was issued for Milliman's arrest.  (*See* Compl. ¶ 20.)

On February 26, 2011, Milliman returned to Missouri in a commercial vehicle, this time to retrieve a trailer that had been abandoned by another driver.[2]  (*Id*. ¶ 23.)  The

---

[1] Milliman does not specify the date of the Andrew County traffic stop, but he does allege that plea negotiations took place in 2010.  (*See* Compl. ¶ 20.)  The traffic stop must therefore have occurred prior to those plea negotiations.

[2] Again, Milliman does not specify in his complaint the date of these events.  Attached to his complaint, however, is an order of Meeker County, Minnesota that mentions the events as taking place on February 26, 2011.  (*See* Doc. No. 1-1 at 3.)  "'[M]aterials

2

weigh station in Howell County, Missouri was open at the time Milliman passed, and he was therefore obligated to stop at the weigh station under Missouri law.  (*Id.*)  Upon Milliman's arrival, Defendant and Missouri State Highway Patrol Commercial Vehicle Inspector Levi Stoops asked to see Milliman's logbook, license, permits, and bills of lading.  (*Id.*)  Stoops then inspected Milliman's vehicle, which Milliman interpreted as stalling for time until a state trooper could arrive to investigate him further.  (*Id.*)  After his search was complete, Stoops informed Milliman that he was "not under arrest but you cannot leave either because a state trooper is on his way to talk to you about a discrepancy I found."  (*Id.*)

When Defendant S.L. Nelson, Missouri State Highway Patrol Trooper, arrived at the scene, he placed Milliman under arrest for the outstanding warrant from Andrew County discussed above.  (*Id.* ¶ 26.)  Nelson asked to perform a search of the vehicle, to which Milliman responded, "It does not matter what I say you are going to do what you are going to do."  (*Id.*)  Upon searching the car, Nelson located marijuana and drug paraphernalia.  (*Id.* ¶ 27.)  Milliman was charged in Howell County with possession of marijuana, driving under the influence, possession of drug paraphernalia, and failure to keep a proper logbook.  (*Id.* ¶ 29.)  According to Milliman, "these charges have never been resolved for many reasons."  (*Id.*)

---

attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.'"  *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)).

The Howell County charges triggered a chain reaction that resulted in Milliman's commercial and personal driver's licenses being revoked in Minnesota. In very general terms, the interstate Driver License Compact ("Compact"), *see, e.g.*, Minn. Stat. § 171.50, requires participating states to impose licensing restrictions on drivers who commit moving violations in other states; those restrictions must be similar to the restrictions that would have been imposed if the infraction were committed in the licensing state itself. In Milliman's case, the Missouri citations and charges were reported to the Minnesota Department of Public Safety. Acting pursuant to the Compact, the Minnesota Department of Public Safety treated Milliman's Missouri infractions as though they had occurred in Minnesota and imposed the penalty — revocation of his driver's license — that would have been imposed had Milliman violated Minnesota law directly.

Milliman has fought the revocation of his driver's license tooth and nail, but the Minnesota courts have steadfastly refused to reconsider the revocation until the Howell County matter is resolved. (*See* Doc. No. 1-1 at 3-6 (citing Minn. Stat. § 171.19)). Now, Milliman brings this action under 42 U.S.C. § 1983, asserting claims against nearly everyone so much as remotely involved at any point during the saga — the "Driver License Compact Commissioner"; the Director of the Missouri Department of Revenue; Commissioner of the Minnesota Department of Public Safety; the law-enforcement officers who effected the traffic stops, as well as their superior officers; Andrew and

4

Howell Counties; and the prosecutors and judges in both Missouri and Minnesota who were involved in Milliman's prosecution and the revocation of his driver's license.[3] As stated at the beginning of this Recommendation, the matter comes before the Court on consideration of Milliman's IFP application.

## II. ANALYSIS

Based on the information provided by Milliman in his IFP application, the Court finds that Milliman qualifies financially for IFP status. However, an IFP application will be denied, and the action will be dismissed, when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam). In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched

---

[3] A previous complaint filed by Milliman in federal court was dismissed without prejudice for excessive prolixity. *See Milliman v. Driver License Compact Commissioner*, No. 15-cv-2779 (ADM/BRT) (D. Minn. dismissed Nov. 16, 2015).

as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

This Court will proceed in (mostly) chronological order through the events at issue in evaluating Milliman's claims under § 1983. As explained below, none of those claims is viable.

### A. Andrew County Traffic Stop and Legal Proceedings

The events at issue in Milliman's complaint begin with the traffic stop in Andrew County, Missouri. Milliman contends that this traffic stop was unlawful for two reasons. (*See* Compl. ¶ 15.) First, Shewey — the law-enforcement officer who effected the stop — lacked statutory authority under Missouri law to perform traffic stops outside of weigh stations. (*Id.*) Second, the traffic stop was not based upon probable cause to believe that Milliman had done anything illegal. (*Id.*) The Andrew County traffic stop led to Milliman being cited for not carrying the proper fuel permits and failing to carry a logbook, and set into motion the chain of events leading to revocation of Milliman's driver's license. (*Id.*)

As with all of his claims, Milliman seeks recovery under § 1983 for the traffic stop, presumably for what he believes to have been violations of the Fourth Amendment. There is no allegation that Shewey performed a search at the time of the arrest, so Milliman's § 1983 claim against Shewey must therefore be premised upon the allegation

6

that the traffic stop constituted an illegal seizure. *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) (noting that a traffic stop is a seizure within the meaning of the Fourth Amendment).

There are several problems with Milliman's § 1983 claim regarding the legality of the Andrew County traffic stop. First, although it is true that Missouri commercial vehicle inspectors lack statutory authority to issue citations outside of weigh stations, *see State v. Ruch*, 926 S.W.2d 937, 938-39 (Mo. Ct. App. 1996) (citing Mo. Rev. Stat. § 304.230), to say that Shewey exceeded his state-law statutory authority (assuming Milliman's allegations are true, as this Court must) is not the same thing as to say that Shewey violated the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164, 171-72 (2008). There is no reason to think that Missouri, consistent with the Fourth Amendment, *could* not extend the authority of commercial vehicle inspectors to make traffic stops outside of weigh stations. That Missouri *has* not extended this authority may render Shewey's actions unlawful for purposes of state law, but that violation of state law, by itself, does not make the traffic stop unreasonable for federal constitutional purposes. *See also United States v. Castleman*, 795 F.3d 904, 912-13 (8th Cir. 2015) ("[A] seizure in violation of state law does not necessarily offend the Fourth Amendment"); *Rose v. City of Mulberry, Ark.*, 533 F.3d 678, 680 (8th Cir. 2008) (no Fourth Amendment violation where law-enforcement officer had probable cause to make a traffic stop and arrest, but lacked authority to do so under state law).

7

More important than whether Shewey had statutory authority to effect the traffic stop is whether he had probable cause to do so. But this leads to the second problem with Milliman's claim: Although Milliman alleges conclusorily that Shewey lacked probable cause to effect the traffic stop, his allegations are insufficient to claim plausibly that Shewey in fact lacked probable cause. Rather than alleging, for example, that Shewey had no reason to believe he was not carrying the necessary permit, Milliman instead alleges only that Shewey could not have justified a traffic stop over fuel permits because failure to carry the appropriate fuel permits is not a criminal violation. (*See* Compl. ¶¶ 15-18.) But many moving traffic violations are civil offenses in many jurisdictions, and yet an officer may effect a traffic stop upon acquiring probable cause that the civil offense has been committed. *See Whren v. United States*, 517 U.S. 806, 808, 811-16 (1996). Further, Shewey did not need probable cause that Milliman committed the particular violations for which he was ultimately cited. Even if Shewey did not have probable cause for one of those violations (failure to carry fuel permits), probable cause of *any* moving violation would have been sufficient. *Id*. The traffic stop still would have been justified if Shewey had probable cause to believe a different violation had been committed, and Milliman does not allege Shewey lacked probable cause to believe any infraction had occurred.

But even if Milliman were correct that Shewey acted in violation of the Fourth Amendment, Milliman has waited too long to act on his § 1983 claim. The Andrew

County traffic stop occurred in Missouri and is therefore governed by Missouri's statute of limitations. *See Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011) (noting that "§ 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims."). Section 1983 claims are governed by Missouri's five-year statute of limitations for personal-injury claims. *See Sulik v. Taney Cnty., Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005) (citing Mo. Rev. Stat. § 516.120(4)). Milliman's § 1983 claim regarding the putatively unlawful Andrew County traffic stop accrued in 2010,[4] when the traffic stop occurred and when Milliman possessed a complete and present cause of action against Shewey. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Milliman did not file this action until 2016. This was too late.

Milliman's remaining claims relating to the Andrew County traffic stop are brought against the prosecutor who pursued the citation (Steven Stevenson) and the judge who presided over the proceedings (Michael J. Ordnung). But the only conduct alleged to have been committed by those Defendants arose out of those Defendants' official duties. Both Defendants are absolutely immune from civil suit for actions taken in their official roles as a prosecutor and judge, respectively. *See Mireles v. Waco*, 502 U.S. 9, 110-12 (1991); *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). Even if Stevenson and Ordnung acted beyond their legal authority during the Andrew County proceedings — a claim that is quite flimsy from the facts alleged in the complaint — they

---

[4] *See* Footnote 1, *supra*.

9

were nevertheless acting in their prosecutorial and judicial capacities and may not be held liable for those actions.

### B. Howell County Stop, Arrest, Search, and Legal Proceedings

After the Andrew County traffic stop, Milliman returned to Minnesota. His job as a truck driver, however, soon required that he travel back to Missouri. The weigh station in Howell County was open at the time Milliman passed, and Milliman was therefore required to stop at the weigh station. There, Defendant Stoops examined Milliman's documents and performed an inspection of the vehicle. (Compl. ¶¶ 23-24.) Upon completing the inspection, Stoops asked Milliman to await the arrival of state police "to talk to you about a discrepancy I found." (*Id*. ¶ 24.) When trooper Nelson arrived, he placed Milliman under arrest on the outstanding warrant from Andrew County, conducted a search of Milliman's vehicle, and discovered marijuana and drug paraphernalia. (*Id*. ¶¶ 26-27.) Milliman was eventually charged in Howell County with possession of marijuana, possession of drug paraphernalia, driving under the influence, and failure to keep a proper logbook. (*Id*. ¶ 29.) Those criminal proceedings appear to still be ongoing, although Milliman does not explain why these charges have not been resolved in the more than five years that have since passed. (*Id*.)

Milliman's § 1983 claims emanating from the Howell County stop fail for many of the same reasons his claims emanating from the Andrew County stop fail. Critically,

the stop and arrest took place on February 26, 2011.[5] Milliman filed this action on May 9, 2016 — that is, over five years after his claim accrued, and therefore beyond the five-year limitations period for § 1983 claims accruing in Missouri. Nothing precluded Milliman from properly raising § 1983 claims against Stoops and Nelson during the five-year period following the traffic stop and arrest.[6] He did not, and it is now once more too late.

In addition, Milliman again tries to proceed against the prosecutor (Defendant Michael Hutchings) who pursued the criminal charges against him in Howell County. Just as with the claim against the Andrew County prosecutor, Hutchings is absolutely immune from suit for actions taken in his role as a prosecutor. *See Saterdalen*, 725 F.3d at 842-43. Even if everything Milliman says about the impropriety of the traffic stop, search, and arrest were true, Hutchings would be insulated from suit for claims arising from the pursuit of criminal charges arising from the arrest.

---

[5] *See* Footnote 2 *supra*.

[6] Milliman's claim is not and has never been barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), both because it does not seem that Milliman was ever convicted of the Howell County offenses for which he was charged and because his Fourth Amendment claims would not necessarily imply the invalidity of his arrest or subsequent search, *see Collins v. Bruns*, 195 Fed. App'x 533, 534-35 (8th Cir. 2006). In any event, *Heck*'s effect (or lack thereof) has no effect on the date on which Milliman's claim accrued. *See Wallace*, 549 U.S. at 387-97.

### C. Driver's License Revocation

The heart of Milliman's complaint concerns the revocation of his driver's license, through the operation of the Compact, following the Andrew County and Howell County incidents. There are essentially two components to Milliman's claim regarding the revocation of his driver's license. First, Milliman alleges that the Compact is constitutionally invalid as a general matter. This argument itself proceeds in two parts: according to Milliman, (1) the Compact restricts citizens' constitutional right to travel by allowing states to restrict the right to use the public roads, and (2) the Compact discriminates between in-state and out-of-state drivers in violation of the federal constitution's Commerce Clause, which (through negative implication) provides that "states may not enact laws that discriminate against or unduly burden interstate commerce." *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592 (8th Cir. 2003).

Neither aspect of Milliman's argument is persuasive. With respect to the argument that states may not lawfully restrict use of the roads consistent with the federal constitution, such arguments have been regularly and roundly rejected. *See Triemert v. Washington County*, No. 13-cv-1312 (PJS/JSM), 2013 WL 6729260, at *8-9 (D. Minn. Dec. 19, 2013) (collecting cases). Such lawful restrictions may include that drivers be properly licensed. *See Hendrick v. State of Maryland*, 235 U.S. 610, 622 (1915).

Whatever Milliman's personal feelings about the matter, (*see* Compl. ¶ 1), the question has long been settled.

Milliman is correct that states may not, consistent with the Commerce Clause, regulate travel in a way that discriminates against interstate commerce or out-of-state economic interests. *See, e.g.*, *Oregon Waste Sys., Inc. v. Dep't of Environmental Quality*, 511 U.S. 93, 99 (1994). But a state *may* properly permit a licensing restriction to be "applicable alike to vehicles moving in interstate commerce and those of its own citizens." *South Carolina State Highway Dep't v. Barnwell Bros.*, 303 U.S. 177, 189 (1938) (quotation omitted). Moreover, it is not entirely clear why Milliman believes the Compact runs afoul of the Commerce Clause's prohibition against discrimination towards out-of-state interests. After all, the effect of the Compact is that a driver licensed in a state that is part of the Compact and travelling through a Compact signatory will be treated the *same* regardless of where he might travel; a moving violation in one state will carry the same concomitant consequences wherever it might be committed. In other words, the Compact required that Milliman suffer the same consequence that he would have suffered had he been a citizen of Missouri — loss of his driver's license. Never does Milliman plausibly allege how this *equal* treatment constitutes discrimination in violation of the Commerce Clause.

Second, Milliman alleges that Missouri and Minnesota officials have simply misapplied the Compact in finding that his driver's license should be revoked. The

13

correct application of the Compact is ultimately a question of state law, and "'a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983.'" *Colbert v. Roling*, 233 Fed. App'x 587, 589-90 (8th Cir. 2007) (quoting *Collins v. Bellinghausen*, 153 F.3d 591, 596 (8th Cir. 1998)). Moreover, as also explained below, this question of state law — have Missouri and Minnesota abided by the Compact in revoking Milliman's driver's license? — has been litigated and re-litigated in state-court proceedings. These claims are squarely foreclosed by the *Rooker-Feldman* doctrine,[7] which "precludes lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments." *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016). Milliman may not, consistent with the *Rooker-Feldman* doctrine seek relief in federal court from those state-court judgments.

### D. Minnesota Reinstatement Litigation

Milliman's last group of claims relates to his repeated attempts in Minnesota state court to have his driver's license reinstated. In large part, Milliman effectively seeks appellate review of state-court judgments; he argues that those courts have misapplied the Compact and relevant state law in finding that he is ineligible for reinstatement of his driver's license. These claims, too, are foreclosed by the *Rooker-Feldman* doctrine. *Rooker-Feldman* precludes Milliman from asking this Court to effectively overrule the

---

[7] *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).

state-court judgments finding that he is not entitled to reinstatement of his driver's license.

The remainder of Milliman's claims are generally barred by prosecutorial and judicial immunity.  In the case of the Minnesota judges involved in the proceedings, there is no plausible allegation that their actions in presiding over the litigation brought by Milliman were taken in the complete absence of all jurisdiction.  Their immunity is therefore absolute, "regardless of whether the judicial acts were malicious, corrupt, or wrong."  *Pittman v. Martin*, 569 Fed. Appx. 89, 91 (3d Cir. 2014) (per curiam).  In the case of the Minnesota prosecutors, the entirety of their alleged actions were taken in the course of their official duties and intimately associated with the judicial process, and so they are absolutely immune from suit as well.  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996).

### E. Conclusion

Milliman has failed to state a viable claim for relief under § 1983.[8]  The problems with Milliman's complaint are not amenable to repleading, and thus it is recommended

---

[8] Milliman occasionally gestures towards claims raised under state law (for example, that state officials have violated the Compact, or that prosecutors and judges have violated state ethical rules), but the only claim explicitly raised is one under § 1983. (*See* Compl. at 1.)  In any event, Milliman does not plead a basis for the Court's original jurisdiction over state-law claims, and no such jurisdictional basis occurs to this Court from the face of the complaint.  Accordingly, the Court can consider any state-law claims only if it exercises supplemental jurisdiction over those claims.  *See* 28 U.S.C. § 1367.  The Eighth Circuit, however, has instructed courts not to exercise supplemental jurisdiction over state-law claims where, as here, all federal claims are dismissed prior to trial.  *See*

that this matter be dismissed with prejudice. *See Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009) (noting that dismissal of a complaint with prejudice is not an abuse of discretion when amendment would be futile). Because the complaint fails to state a claim on which relief may be granted, Milliman's IFP application should be denied. Finally, there is absolutely no likelihood of Milliman succeeding on the merits of his claims, and so his motion for a temporary restraining order and preliminary injunctive relief [Doc. No. 3] should be denied as well. *See Luke v. Dougan*, No. 13-cv-1748 (ADM/JJK), 2013 WL 3833986, at *1 (D. Minn. July 24, 2013).[9]

## III. RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. This matter be SUMMARILY DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

*Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008). Because this Court does not interpret Milliman as raising state-law claims, it ultimately does not recommend dismissal of those claims.

[9] To be clear, this Court has considered each of the *Dataphase* factors in recommending denial of Milliman's motion. *See Dataphase Sys, Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). But even assuming that Milliman will suffer irreparable harm if his driver's license is not restored immediately (the only *Dataphase* factor that might possibly favor Milliman), the effect of that harm is dwarfed by the fact that Milliman has no chance of succeeding in this lawsuit, and thus no chance of procuring permanent injunctive relief.

2. Plaintiff Lance Gerald Milliman's application to proceed *in forma pauperis* [Doc. No. 2] be DENIED.

3. Milliman's motion for a temporary restraining order and temporary injunction [Doc. No. 3] be DENIED.

Dated: May 23, 2016
      s/ *Hildy Bowbeer*
      HILDY BOWBEER
      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.